Will the clerk please call the next witness? 4-6-8-0-1-1-6 McLean County Nursing Home v Workers' Compensation Comm'n Good morning. Good morning. Brett Elwood on behalf of McLean County Nursing Home. We're asking you to really do two things in this case. We're asking you to reverse the Commission's decision on the issue of permanency and remand that for further consideration of permanency. And I'll get into that in a couple seconds here about exactly why we think that's wrong. But our second issue is related to that remand. We're asking that when the matter is remanded to the Commission to evaluate permanency, that the consideration of the cervical injuries be limited to a cervical strain. And if I could start for a minute with the remand on permanency, I think that will help put everything into context. As you're aware, the Commission here awarded 50% of a man as a whole, 50% of a person, for three distinct types of injuries. We had a TMJ injury with some surrounding injuries to the jaw. We had a shoulder injury. And we had a cervical injury. And we're not disputing that those injuries exist. The problem that we have with the permanency award in this case is that they did not walk through those and say X percent for the TMJ, Y for the shoulder, and Z for the cervical. They just lumped them together. Now, you're saying, well, why is that a big deal? They awarded 50% permanency. Why can't you attack that? Well, the problem is I'm speculating my argument that the decision is against the manifest way to the evidence when I don't know what they attributed the percentages to for the various injuries. Because every time I say they awarded too much for permanency on TMJ or too much on cervical, the proper response back would be, well, how do you know what they awarded? Well, this obviously isn't a case of first impression in terms of a commission making an award of this type where it hasn't been broken down to each component injury. Is there any case that would suggest that that kind of lump PPD should be invalidated? We did not find any, Your Honor. If they're out there and we missed it, that may be. But we looked through it and we did not find any case that dealt with that issue and broke that out. And I think it's a similar argument I was telling counsel in the courtroom this morning. I think this is similar to what the court did in Corbell Energy when you took a look at the factors of the AMA and whether or not the commission properly explained those factors. And I think the argument there was how can you argue that it's against the manifest way if you don't know what they relied upon? Well, I think the same argument applies here. I'd be happy to supplement the record with that case. Isn't that exactly what 8B2 is set up for, this kind of situation where somebody maybe has multiple injuries and the commission feels that it's better to award a man as a whole than specific? I think the commission can in areas where the act itself doesn't break it down into a wrist or a finger or an elbow or an arm. But in a situation like this where everything falls within that open range of a person as a whole, how are we ever supposed to attack that? Because every time I say they awarded too much for cervical, it was just a strain, you can come back and say, well, they may have only awarded 2% and the rest of it was on TMJ. As soon as I come back and say they awarded too much on TMJ, you could come back and say, well, they awarded 12% on TMJ and the shoulder and the cervical were what constituted the rest of the award. How am I ever supposed to credibly come in here on a manifest way? How are they ever supposed to come in on a manifest way that's too low and say this was too low? This should be a greater manifest way or a PPD award. All we're asking is to make the commission say what you're assigning the percentages for and you can keep it under a person as a whole. Just give us something to argue from. Now, the second part of that argument is simply this. If we're going to send the case back for consideration and for a breakdown or spelling out of the percentages, it's our position that on the issue of the cervical injury that the record here is overwhelmingly clear that this is nothing more than a cervical strain. And again, as counsel said in the first argument, we're very aware of the manifest weight standard and the difficulties. But when you look at the commission's decision, it's not the most articulate decision. I mean, they really didn't lay out in definitive terms exactly what they were finding this lady had here. But clearly on page 1683 of the record, the commission's decision says that they're basing in part the cervical award on a chronic left cervical radiculopathy. And they talk again about this continuing cervical problem that was continuing up to the date of the arbitration. And the problem with that is I don't think there's evidence in the record to justify a causal connection as her cervical condition on the day of arbitration back to the accident, which was some six or seven years prior. And when we look at the medical that we pointed out in our brief, I think that gives us that push over the analysis on how we do show an opposite result is clearly apparent. We have Dr. Rink, who initially diagnoses this as a cervical strain. He looks at the MRI that was performed within a month or so after the accident. He says he doesn't see anything abnormal. He diagnoses a strain. He says when he looks at the film, the results are clear. This is a strain. We don't see any indication of a disc bulge. We don't see anything supporting radiculopathy. We have Dr. Martin doing a cervical IME the following spring. And he says he's reviewed the film. He sees some indication on the film of a degenerative disc disease. But he very clearly says, I do not relate that to the accident because if you look at the date the film was taken compared to the date of the accident, you would not see that level of degeneration in such a short window. So we have another opinion that there's just a strain. And finally, we look at Dr. Hennessey, who looks at the claimant in October of 2012. And he not only reviews the initial MRI film, but reviews the other three. And he specifically notes, I've reviewed all the MRI films and I do not see anything that would justify finding the complaints, something that would justify the complaints of the radiculopathy. And so he's asked some really interesting questions. The counsel that was asking the process, well, look, we've got subjective complaints of radiculopathy. And we've got an EMG that says there could be some radiculopathy. I think it was C6-7 and 8. Why isn't that enough? He says, well, if we're doing our analysis, that might raise our suspicion. He said, our next step is to perform an objective study, which would be an MRI. And she's had four of them, and they're all negative. So I'm not finding any objective evidence to support her complaints of radiculopathy or to link that to the November 6, 2006 accident. And it's for those reasons that we're saying, if we get this case back for consideration of permanency and a breakdown, then for the cervical part, we have to at least look at that condition as a cervical strain and not as a radiculopathy or anything that's more complex. And then that will factor in to how the commission values this case as a person as a whole. Thank you. Thank you, counsel. Counsel, you may respond. Good morning. Pleased to report, my name is Steve Williams. I represent the petitioner in this case. The petitioner had an injury to her shoulder. She had an injury to her jaw, which resulted in a TMJ dysfunction. She had an injury to her cervical spine, and she also had an upper back problem, which was a myofascial pain syndrome. The shoulder is now man as a whole. The jaw is now man as a whole. The neck is now man as a whole. And the cervical spine is, of course, man as a whole. So the first reason why this shouldn't be apportioned is it's all in the same body part, all where it should be. The second reason why this shouldn't be sent back to be apportioned is that all these conditions went into the same pot, and the same pot got stirred around and came up with the FCE. And the commission and the arbitrator as well based a large amount of their decision on what the FCE said. So I don't think you can say in an FCE, especially in this close of a body part, that we're taking out the cervical spine and just looking at the shoulder, or we're taking out the shoulder and just looking at the cervical spine, because all those went into the FCE, and the FCE all went into her restrictions, and that dictated what type of job she would have after the FCE, that it all comes all together into one point. And the other thing is, too, is that the commission and the arbitrator awarded 40 of a man, and then the commission raised it to 50 of a man. And the reason why they did that was because this was a loss of occupation case. So I'm just curious about that. Okay, so the FCE says it's all been put together in a cauldron and mixed together. Correct. Coming up with a conclusion of what the overall extent of man as a whole disability is. Is that correct? Yes, sir. So what you're saying, if you want to apportion, then maybe it should be done in examining the FCE report with hypotheticals that let's take out this condition. What would the claimant's level of disability be? Let's remove this condition. And so that you could make an inference back as to the apportionment of each one of the conditions as to a contribution to the overall disability of the man as a whole. I think that when you're doing an FCE, I don't think you can take out a cervical spine part. The FCE measures how long you can stand, how long you can sit, how much you can lift, how long you can reach, how much you can do overhead. Yeah, but you can apportion it out as to this condition, what does it contribute to that level of disability versus if that condition were not present. I don't think you can do that in FCE. I don't think there's any way that you can take an FCE and take out a certain section and say, doctor, is she able to lift because of the shoulders? Is she not able to lift because of the cervical spine? I think the doctor would look at the FCE and say that it's all one portion. Who does the FCE? The FCE in this case was done by the treating doctor, Dr. Rink, at what's now OSF Clinic. Well, at least you can ask a question and say, okay, let's take out this myofascial. To what extent does that contribute to this limitation of the claimant? Could you ask the question? I'm sure you could ask the question. I think the doctor would reply to you that you wouldn't have a valid FCE if you took out one particular part because in the FCE they just don't test the shoulder, they test the whole body. You could still give an opinion. You could still give an opinion. Okay. You could still give an opinion. The next point is about the cervical condition, and the first thing that I wanted to note in the cervical condition is there's two doctors, both treating doctors that testified that there's a causal relationship between the cervical condition and the condition of ill-being, and that was Dr. Rink, who was the treating doctor, and also Dr. Piper, who did the TMJ surgery. In my point of view, in my humble opinion, I actually think that the respondents won this case. We asked for a permanent and total disability, and we got 50 of a man. We did not ask to review that because I think that the weight of the evidence shows that a decision of 50% of a man is appropriate in this case. The petitioner had no prior work restrictions. She had no prior conditions. She had no prior jaw surgery. She had no prior shoulder surgery. She had no FCE. She had no injections. She had a pre-employment physical, which showed no abnormalities whatsoever. She sought immediate treatment at the emergency room, where she complained of cervical pain and jaw pain and pain in her head. She promptly went to her family doctor, who noted neck and trapezius pain. The same date of the injury, she went to the occupational medicine doctor, while she found head, jaw pain, swelling, and pain in the jaw. So there was neck pain there as well. She was diagnosed with TMJ dysfunction by Dr. Holmes in November of 2006. He noted neck pain. The employer in their brief said that there was a large gap in time in cervical pain. I don't think there was. You find cervical pain in 11-06, January of 07, March of 07, April of 07, May of 07. Then you find it again in 11-07. Then she has two surgical procedures, one to the shoulder in May of 08 and the surgery to the jaw in July of 08. And then back in November of 08, there's more cervical pain. The cervical pain continues in July of 09 and goes on throughout the record. So I don't think that there is a gap. Even if there is a gap, I think the gap is small, and I think that the evidence supports the fact that the cervical condition should be causally related to this injury. Thank you. Thank you, counsel. Counsel, you may reply. Let me just say this with respect to Dr. Rink and Dr. Piper. Dr. Rink certainly relates the cervical strain to the accident. That's not the question here. It's whether the continuation of this condition six, seven years after the accident is related or is it related to the accident or is it related to this degenerative condition that's clearly noted, and the opinions are clear in our favor. Dr. Piper's focus of treatment was the TMJ. Certainly he noticed complaints and made remarks with respect to that, but that was not his area of specialty. We do think this is a case where it would have been very simple to articulate what the percentages are. We understand that the man-as-a-whole, person-as-a-whole is meant to cover multiple types of injuries at times to the areas that counsel did properly identify, but in order for us to ever review that, they've got to be able to break that down so that we have a litmus to argue off of. Otherwise, I'm arguing against myself. I'm arguing against speculation, and I'll never win that, and neither will they. Well, can you force it? I guess maybe my question wasn't very clear, but can you force it through the examination of the FCE? You could force it through a physician. Doctor, do you have an opinion if we're considering only the cervical injury? Would this individual be able to work? I think as counsel said, there are some times, depending on where the injuries are and how close they are in body parts, where it is going to be very difficult to distinguish, is this because of the arm, is this because of the neck? But that's only half the battle. It doesn't mean we can force the commission. Only you can do that. I can ask the doctor questions like that all day and even get speculation, but if the commission just lumps it together, I'm still in the same spot I am today. That has to come from you. Thank you. Thank you, counsel, both for your arguments in this matter. We take no advisement that this position shall issue. The court will stand in brief recess.